## J. F. EVERETT v. LONDON ETC. INS. CO.

### APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS OF CLINTON COUNTY.

Argued March 17, 1891—Decided May 18, 1891.

(a) In assumpsit upon a policy of fire insurance, the defence was the violation of three separate conditions of the policy: (1) Over-insurance, beyond the amount consented to by the defendant; (2) failure to ascertain the amount of loss by arbitration before suit; and (3), failure to bring suit within the time limited:

1. Statements in the form of proofs of loss, showing also the shares proposed to be paid proportionally by the several companies interested, made out by adjusters whose authority to act for the defendant therein was not shown, were not sufficient evidence to establish a waiver by the defendant of the condition against over-insurance.

2. To constitute a waiver by implication of a condition requiring a suit upon a policy to be brought within a certain time, there must be some act or declaration by the company dispensing with it, done or made during the running of the period of limitation, not after it has expired and the rights of the parties are fixed.

3. Letters written by the company to its agents, but their contents, informing the latter that to avoid litigation the company would settle under certain conditions, not made known to the plaintiff and the conditions performed, are not evidence of a waiver by the company of the time limit within which suit must be brought.

4. Where the receipt and retention of proofs of loss are relied upon as an acquiescence and agreement as to the amount thereof, or, if not relied upon, where the policy provides a specific method of ascertaining the amount of the loss, the admission of parol testimony as to the quality and value of the goods destroyed is error.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS, MC-COLLUM and MITCHELL, JJ.

No. 157 July Term 1890, Sup. Ct.; court below, Nos. 141 January Term 1888, 38 February Term 1889, C. P.

On December 27, 1887, to No. 141 January Term 1888, of the court below, J. F. Everett, for use, brought assumpsit against the London & Lancashire Insurance Company, to recover upon a policy of insurance against loss by fire, containing the following conditions:

### Statement of Facts.

"1. If the insured shall have or shall hereafter make any other insurance on the property hereby insured, or any part thereof, without the consent of the company written thereon, . . . . then and in every such case the policy shall be void.

"2. If any difference shall arise with respect to the amount of any claim for loss or damage by fire, and no fraud suspected, such difference shall be submitted to arbitrators, indifferently chosen, whose award or that of the umpire shall be conclusive."

"14. It is furthermore hereby expressed, provided and mutually agreed that no suit or action against this company for the recovery of any claim by virtue of this policy shall be sustainable in any court of law or chancery until after an award shall have been obtained fixing the amount of such claim in the manner above provided, nor unless such suit or action shall have been commenced within three months next after the loss shall occur; and should any such suit or action be commenced against the company after the expiration of the aforesaid three months, the lapse of time shall be taken and deemed as conclusive evidence against the validity of such claim, any statute of limitations to the contrary notwithstanding.

"15. The use of general terms, or anything less than a distinct, specific agreement, clearly expressed and indorsed on this policy, shall not be construed as a waiver of any printed or written condition or restriction therein."

The property insured was destroyed by fire on January 6, 1887.

The writ of summons in this action and like writs in like actions against the Niagara Insurance Company of New York and the Washington Insurance Company were issued on December 27, 1887. Returns of service upon the designated agents of the companies having been made, Mr. C. S. McCormick entered an appearance de bene esse for the defendants, and caused a rule to issue to show cause why the returns of service should not be set aside. On December 28, 1888, said rule was made absolute. On January 11, 1889, under a rule of court providing that if no declaration or statement be filed within one year from the first day of the term to which an action is brought, a judgment of non-pros may be entered by the prothonotary, as a matter of course, etc., the defendant's attorney caused judgment of non-pros to be entered, in default of a declaration or statement.

Charge of Court below.

On January 25, 1889, the plaintiff's counsel filed a præcipe, referring to the case at No. 141 January Term 1888, and directing the prothonotary to issue an alias summons. On the same day the prothonotary issued an alias summons, but docketed it to No. 38 February Term 1889. This writ was duly served; and on February 2, 1889, a statement of claim was filed, to the number and term last mentioned, and issue afterwards joined on the plea of non-assumpsit.*

At the trial on March 4, 1890, Mary Sherlock, called for the plaintiff, testified that she had been employed as a clerk in the store, and was well acquainted with the plaintiff's stock at the time of the fire. "Q. Was that store pretty well filled with goods or not?"

"Defendant's counsel objects to the evidence showing or tending to show the value of the goods in the store at the time of the fire, or the loss sustained by the assured, because provision 2 provides the method by which the amount and the value of the property destroyed is to be arrived at, and makes that method conclusive."

By the court: Objection overruled, offer admitted; exception.[8]

Under this offer, the witness testified to the character and quality of the plaintiff's stock, and that his loss by the fire was about $8,000.

O'Conner, a witness for the plaintiff, testified that he was the agent of the defendant company at Lock Haven; that he had received two letters from the defendant company between two and three months after the fire; that the letters were lost, but their contents were "to the effect that the company admitted no liability, but, in order to save trouble and litigation which they were loath to enter into, they would settle on the basis of the adjustment that had been made, provided the attachments and assignments and other difficulties could be removed so that they would be square in the matter."

At the close of the testimony, the court, BARNETT, P. J., 41st district, specially presiding, charged the jury as follows:

---

* For a more full report of these preliminary proceedings, see Everett v. Niagara Ins. Co., ante, 322.

Charge of Court below.

J. F. Everett, the legal plaintiff in this case, was at one time a merchant doing business in this city. He had a stock of dry goods upon which he effected a total insurance of some $8,500, distributed among six different companies. During the continuance of the life of those policies, a fire occurred and those goods were destroyed, and this suit is now brought against the defendant company, the London & Lancashire Insurance Company, of Liverpool, England, for the purpose of recovering from it their proportionate share of the loss sustained. The plaintiff has given in evidence the policy, shown when the fire occurred, called some witnesses to show the probable value of the goods and that the representatives of the defendant company met for the purpose of adjusting the loss, and that [they agreed upon what should be the total loss and the proportionate share of each of these companies, what they should pay;] [3] and if this was all that was in this case the plaintiff would be entitled to your verdict, and would be entitled to recover from this defendant the amount of its proportionate share of the five thousand dollars, less the $186.52 and some costs that were paid upon the attachment execution.

But the defence in this case is that the policy of insurance upon which this action is based contains certain clauses which will prevent a recovery by the plaintiff. One clause is, that if other and additional insurance was effected upon those goods without the consent of the company issuing this policy, that it would avoid the policy, that it would be a bar to the plaintiff's right to recover. They did consent, however, that additional insurance, not to exceed three thousand dollars, should be effected upon the goods of the plaintiff, they having insured to the extent of fifteen hundred dollars. Having permitted additional insurance of three thousand dollars, they agreed that the goods might be insured to the amount of $4,500. But, in point of fact, these goods were insured to the amount of $8,500, this being largely in excess of the amount which this company agreed to insure and permit to be insured. If there were nothing else in this case which would avoid this policy, the excess of insurance would render this policy void, and the plaintiff could not recover.

There is another clause contained in this policy of insurance which provides that no suit shall be sustained unless after an

Charge of Court below.

award of arbitrators fixes the amount of the loss ; but, so far as this clause in the policy is concerned, we are of the opinion that there is no need of a tribunal to settle a dispute where no dispute exists. It seems that in this case the plaintiff claimed the full amount of his insurance, the sum of $8,500, but when the adjusters of the several companies met, he was unable to satisfy them that he had sustained that amount of loss by any actual proof which he could furnish, and [he agreed that he would accept five thousand dollars as the amount of his loss ; and the adjusters seem to have agreed that his loss should be adjusted at that amount, and they proportioned the several shares among the respective companies upon that basis. If this was the agreement between the parties, if the plaintiff proposed to accept five thousand dollars, and the adjusters agreed that that was the amount of damage sustained in proportion to the loss, then there was no dispute between these parties and there was no need for a tribunal to settle this dispute, and therefore, there was no necessity for having an award of arbitrators to dispose of and fix that which the parties themselves had agreed and fixed among themselves ; so that, in the opinion of the court, that clause of the policy does not stand in the way of the plaintiff's right to recover.] [4]

The policy of insurance contains also another clause, to the effect that no suit shall be sustained against the company either in any court of law or equity after the expiration of three months after the fire. No suit was brought within the three months. The fire occurred on the sixth of January and this suit was brought on the twenty-seventh of December, I believe, which is more than three months after the fire occurred. And if there were nothing else in this case, that would be a complete bar to the plaintiff's right to recover, and it would be our duty to say to you as a matter of law that your verdict must be for the defendant. If the terms of the policy are allowed to stand as they are and the rights of these parties are to be determined by the terms of the contract as they remain and are expressed in the policy of insurance, then the plaintiff in this case has no right to recover, and your verdict should be for the defendant.

But, the plaintiff says that the defendant company waived these conditions in the policy. A waiver is any act on the part of the defendant which is inconsistent with the intention upon

their part to require a compliance with the provisions and conditions of the policy. [So far as the excess of insurance is concerned, there may not be very great difficulty in this case for the jury to find that there was a waiver of that condition when the representatives of these different companies met for the purpose of adjusting this loss. The agent of this company was aware that insurance had been made to exceed the $4,500. It appeared to the adjusters then that the whole amount of the insurance and the whole amount of the claim was much higher; that it was $8,500. Having knowledge of this excess of insurance, and the company did not act, and showed that, notwithstanding this clause in the policy relating to the excess of insurance, they would be willing to pay their amount, the jury might from that infer that there was a waiver of this condition of the policy.] [5]

On the other hand, with regard to the other condition of the policy, there is more difficulty. That condition is that after the expiration of three months from the date of the fire no suit shall be maintained against this defendant. This suit was not brought until long after the expiration of three months given to the plaintiff to recover. But the plaintiff alleges that there was a waiver of this condition in the policy. The evidence that they rely upon to establish this waiver before the jury, is the agreement, as they allege, the adjustment that was made by the representatives of these different companies, very shortly after the fire, for the purpose of adjusting the terms of the loss; but that meeting was before the three months had expired. They further rely upon the letters which were written sometime subsequent to this fire. [These letters were written after the limit had expired, being some four or five months after the expiration of the three months. The defendant company had written its agent to pay the amount of this insurance; the defendant company, knowing that the limit had already expired, but not standing upon its rights as it might have done under the policy, but agreeing, although denying its liability, still saying although we are not liable to pay, yet because we chose we will not insist upon our not being liable, but settle upon a certain basis.] [6] If they did that with full knowledge that the limit had already expired, the jury might find from that act of the defendant that there was a waiver of this clause in the

Charge of Court below.

policy, and if they do so find they might render a verdict in favor of the plaintiff.

The evidence is not very satisfactory in regard to the time in which these letters were written. Mr. O'Conner says that they were written between two and three months after the fire. That would be before the limit of three months within which the suit was to be brought had expired. Mr. Corss says that he saw these letters, and they were in his possession much longer, considerably longer than three months after the fire. He does not give us the date of those letters, but simply says that they seemed to be freshly written. Now, it is for the jury to determine at what time those letters were written, whether they were written before or after the three months after the fire, and whether from this evidence you feel satisfied that this defendant company did not intend to require a full compliance with the conditions in its policy, and, although saying that they were not legally bound to pay, yet they waived that liability and would settle upon the basis of five thousand dollars. That is the only question really for the jury to determine under the evidence in this case, the question as to whether or not there was a waiver of those two conditions in the policy, the waiver as to the excess of insurance over and above what was permitted by the defendant company, and the waiver of the limit within which suit must be brought.

These questions of fact are for the jury to determine, and that is the first question, the question of waiver, for you to determine before you can find a verdict in favor of the plaintiff. And we say to you that the burden of proof rests upon the plaintiff to satisfy your minds reasonably well by this evidence that there was such a waiver. Taking the policy as it stands, giving full effect to all the conditions in that policy there is an absolute bar to the plaintiff's right to recover. But the plaintiff says that bar is taken away by the waiver of the company. The burden of proof, therefore, rests upon the plaintiff to satisfy you from the evidence in the case that there was such a waiver. [You have heard the arguments of the learned counsel on the one side and the other, and we submit all the evidence and arguments of counsel for you to determine in the first place this question of fact, as to whether there was a waiver by this defendant company or whether there was not.] [7]

If there was no waiver, then the jury should find a verdict in favor of the defendant. If you are satisfied reasonably well that there was a waiver of these conditions, then the plaintiff would be entitled to your verdict. And then, your next duty will be to assess the amount of damages which he is entitled to recover.

—Mr. Ball calls the court's attention to the testimony of Mr. O'Conner and Mr. Corss in regard to the letters.

Well, gentlemen, the evidence of Mr. O'Conner with reference to the letters is that they were written between two and three months after the fire. The evidence of Mr. Corss is that he saw those letters much more than three months after the fire, and that he thinks the dates of them were comparatively fresh and they must have been written but shortly before that. Therefore, the jury must determine when the letters were written and from that fact come to the conclusion whether there was a waiver or not. . . . .

We submit the questions in the case to you under the evidence, reserving, however, for the court, this question of law; no matter if your verdict should be in favor of the plaintiff, we reserve this question of law arising out of the following facts:

The original summons was issued to No. 141 January Term 1888, on the twenty-seventh of December, 1887. On April 21, 1888, a rule was granted to show cause why service of the summons should not be set aside. December 28, 1888, the rule was made absolute, and on January 11, 1889, a judgment of non-pros was entered, under the rules of court, for want of a declaration filed. Then the alias summons was issued to the term to which this suit was brought. It was issued on the twenty-fifth of January, 1889. Upon this statement of facts, which appear from the record and evidence in the case, and were not controverted on either side, we reserve this question of law, whether, notwithstanding the judgment of non-pros that was entered, there could be a recovery in this case in favor of the plaintiff.

We submit the evidence to you, gentlemen, to render such a verdict as you believe to be right and proper under the evidence and the law as we have instructed you.

—The jury returned a verdict in favor of the plaintiff for

Arguments.

$833.43, subject to the questions of law reserved.  Pending a motion in arrest of judgment and a rule for a new trial, the plaintiff on May 19, 1890, filed a petition to No. 141 January Term 1888, to have the judgment of non-pros of January 11, 1889, stricken off.  The same day, the court, MAYER, P. J., entered an order striking off the judgment of non-pros, as prayed for : See Everett v. Niagara Ins. Co., ante 322.

On May 30, 1890, the question reserved, the motion in arrest of judgment, and the rule for a new trial having been argued, the court, BARNETT, P. J., filed an opinion refusing the motion and rule, and directing judgment on the question reserved to be entered for the plaintiff; exception.[1] [2]   See Everett v. Niagara Ins. Co., supra.  Judgment having been entered, the defendant took this appeal, specifying that the court erred :

1, 2. In entering judgment in favor of the plaintiff on the reserved question, and in not entering judgment thereon in favor of the defendant.[1] [2]

3–7. In the portions of the charge embraced in [ ] [3 to 7]

8. In the admission of plaintiff's offer. [8]


*Mr. C. S. McCormick*, for the appellant.

Counsel cited : (1) Farmers Ins. Co. v. Barr, 94 Pa. 345 ; North Western Ins. Co. v. Oil Co., 31 Pa. 448 ; Hocking v. Insurance Co., 130 Pa. 179 ; McClurg v. Fryer, 15 Pa. 295 ; Riddlesbarger v. Insurance Co., 7 Wall. 386 ; Curcier's Est., 28 Pa. 262; Jones v. Orum, 5 R. 249.   (2) Universal Ins. Co. v. Weiss, 106 Pa. 20; Hoxie v. Insurance Co., 32 Conn. 21 (85 Am. Dec. 245); Ripley v. Insurance Co., 30 N. Y. 136 (86 Am. Dec. 369); Waynesboro Ins. Co. v. Conover, 98 Pa. 387 ; Trask v. Insurance Co., 29 Pa. 198.


*Mr. Seymour D. Ball*, for the appellee.

Counsel cited: (1) Bohlen v. Stockdale, 27 Pittsb. L. J. 198; Blair v. Weaver, 11 S. & R. 84; Skidmore v. Bradford, 4 Pa. 296 ; Bolard v. Mason, 66 Pa. 138; Ellmaker v. Insurance Co., 5 Pa. 183; Dailey v. Green, 15 Pa. 118; Gannon v. Fritz, 79 Pa. 303; McClurg v. Fryer, 15 Pa. 293 ; Pennock v. Hart, 8 S. & R. 368 ; Logan v. Green, 1 Pittsb. 43. (2) Worrall's Accts., 5 W. & S. 111; Globe Ins. Co. v. Johns, 4 W. N. 131.   (3) State Ins. Co. v. Todd, 83 Pa. 272; Inland

Ins. Co. v. Stauffer, 33 Pa. 397; National Ins. Co. v. Brown, 128 Pa. 386; McFarland v. Insurance Co.. 134 Pa. 590.

OPINION, MR. JUSTICE MITCHELL:

The first and second assignments of error raise the same question as to the effect of the entry of a judgment of non-pros, under the rule of court, and the subsequent action of the court in striking it off, that was raised and decided in Everett v. Niagara Ins. Co., opinion filed herewith, ante, 329, and for the reasons there given the assignments are not sustained.

This case, like that, comes to us as an alias summons, but it differs from that in the fact that the original on which the alias was based, was not issued within the stipulated period of limitation.

The defence was the violation of three separate conditions of the policy: First, over-insurance beyond the amount consented to by the defendant; secondly, failure to ascertain the amount of loss by arbitration before suit; and thirdly, failure to bring suit within the period limited.

The court below instructed the jury that under the evidence the second condition did not apply, and the third and fourth assignments relate to this instruction. The language of the learned judge can certainly not be sustained. "If this was the agreement," he says, "if plaintiff proposed to accept five thousand dollars and the adjusters agreed that that was the amount of damage sustained, . . . . there was no necessity for having an award of arbitrators to dispose of and fix that which the parties themselves had agreed and fixed among themselves; so that, in the opinion of the court, that clause of the policy does not stand in the way of the plaintiff's right to recover." But the evidence fails to show that the adjusters had any authority to act for this defendant. Good, the only one examined, says distinctly that he did not represent the defendant, and as to Clough, the other adjuster, "I don't know that he represented them more than to write up the proofs of loss." Moreover, the papers prepared by the so-called adjusters were ordinary proofs of loss, prepared for presentation to the companies; and by the testimony of Good there was neither any agreement to pay nor any authority to make such agreement, even for the companies the adjusters represented. It was the

Opinion of the Court.

duty of the insured, not of the insurers, to prepare the proofs of loss; and, without express authority shown, no action in preparing them would in any way bind the insurers. As to this defendant, there was no evidence of any authority at all. There were six companies concerned in this loss, and the adjusters represented at least four of them, and this fact probably led the learned judge into the error. It was in evidence, however, that a copy of the proofs of loss was received by this defendant, and retained, so far as appears, without objection. Such retention was evidence of acceptance by the company, and, as the fact was uncontradicted, the direction of the learned judge that the condition as to arbitration did not apply, might be sustained on this ground. As he well said, there was no need of arbitration to fix that which the parties had fixed between themselves.

The fifth, sixth, and seventh assignments of error are to the submission to the jury of the question of waiver by the conduct of the company, of the conditions as to over-insurance and as to time of bringing suit. In regard to the former, the learned judge said: " There may not be very great difficulty for the jury to find that there was a waiver of that condition when the representatives of these companies met for the purpose of adjusting the loss. The agent of this company was aware that insurance had been made to exceed the $4,500." Unfortunately for this instruction, the evidence, as already noted, fails to show any agency or authority for this company in either of the adjusters. It did appear, however, that the proofs of loss received by defendant contained a schedule of the different companies insuring, the amounts of their policies, and the proportionate payment due from each on the basis of an adjusted loss of five thousand dollars. On the face of this paper, defendant was informed that the amount of insurance on the goods greatly exceeded the limit allowed by its policy. The schedule was also notice that plaintiff was claiming only a proportion of his insurance from the other companies, in the expectation that defendant would also pay its quota. Silence as to the over-insurance, under such circumstances, might mislead the plaintiff into a settlement to his disadvantage with the other companies, and, if it did so, would justify the jury in finding a waiver by estoppel. But the question was not sub-

mitted to the jury on this basis, and the ground on which it was submitted cannot be sustained for want of evidence.

In regard to the time of bringing suit, the failure of the evidence of waiver is even more marked. The policy stipulated that no suit should be sustainable unless commenced within three months next after the loss, and the original writ in this action was not issued until eleven months after. By the terms of the policy it was too late, and the judge correctly so instructed the jury. But he also instructed them that if the defendant, after the stipulated time had expired, had been willing to pay, although denying its liability, they might find a waiver. In this there were two serious errors. The acts to constitute a waiver by implication must be done during the running of the period of limitation, not after it has expired and the rights of the parties have become fixed. In Beatty v. Insurance Co., 66 Pa. 9, it was said by SHARSWOOD, J.: "To constitute a waiver, there should be shown some official act or declaration by the company during the currency of the time, dispensing with it, something from which the assured might reasonably infer that the underwriters did not mean to insist upon it . . . . . After the thirty days had expired without any statement, nothing but the express agreement of the company could renew or revivify the contract." See, also, Gould v. Insurance Co., 134 Pa. 570, and Lantz v. Insurance Co., 139 Pa. 546. In National Ins. Co. v. Brown, 128 Pa. 386, it was said by our Brother McCOLLUM: " That it (the limitation against bringing suit) may be defeated by conduct which constitutes an estoppel or waiver . . . . . is not denied, but there must be evidence of conduct from which an intention to waive it can be fairly inferred, or of an act which ought in equity to estop the company from relying upon it." Applying this test to the present case, the evidence submitted by the learned judge to the jury was, first, the agreement of the adjusters ; and, secondly, certain letters written by the company to its agent in Lock Haven. As to the first, it is disposed of by the fact that no authority from this company to the adjusters was shown. As to the second, the letters were from the company, giving instructions to its own agent. They expressly denied liability, but informed the agent that to avoid litigation the company would settle under certain conditions. These letters were not

addressed to the plaintiff ; nor is there any evidence that their contents were made known to him, or that any action of his was based on them.    There was no element of estoppel in them, even if they had been written during the three months of the limitation, and the weight of the evidence, in the opinion of the court below, was that they were written after the limitation had expired.    As evidence of intention to waive the limitation they were only conditional, and there is no evidence the conditions were complied with, and they were only instructions to their own agent, clearly revocable at any time prior to being made known to and acted upon by the plaintiff.    In any view, they were entirely insufficient to permit the jury to find a waiver from them.

The eighth assignment must also be sustained.    The evidence of Mary Sherlock as to the value of the goods was inadmissible. If the receipt and retention of the proofs of loss without objection was to be regarded as an acquiescence and agreement as to the amount, then the testimony as to the value of the goods was irrelevant; and, if not to be so regarded, then the policy provided a specific way in which the value should be settled before suit brought.

It seems to be doubtful if the plaintiff can present evidence to entitle him to go to the jury on the question of waiver of the time of bringing suit, but as one of the so-called adjusters, Clough, was not examined, it is not clear that plaintiff may not be able to close the gap by his testimony.

Judgment reversed, and venire de novo awarded.